IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| THE SAVANNA GROUP, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, | ) ) ) ) | |
| | ) | No. 10 CV 7995 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Judge Amy J. St. Eve |
| | ) | |
| TRYNEX, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S AGREED MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT AND NOTICE TO THE SETTLEMENT CLASS**

Plaintiff, The Savanna Group, Inc. ("Plaintiff"), on behalf of itself and a class

of similarly-situated persons (identified herein as the "Settlement Class"), pursuant

to Fed. R. Civ. P. 23 (e), respectfully requests that the Court enter an order (1)

preliminarily approving the parties' proposed class action Settlement Agreement

(the "Agreement") attached hereto as Exhibit A, (2) preliminarily approving the

form of Class Notice attached as Exhibit 2 to the Agreement and approving its

dissemination to the Settlement Class by facsimile, and mail if facsimile is

unsuccessful, and (3) setting dates for opt-outs, objections, and a fairness hearing. A

proposed Preliminary Approval Order is attached as Exhibit 1 to the Agreement

and will be submitted to the Court electronically after the hearing.

**I.     Background and summary of settlement.**

1.     Plaintiff alleges on behalf of itself and a putative class that Trynex,

Inc. ("Trynex") violated the Telephone Consumer Protection Act, 47 U.S.C. § 227

(the "TCPA"), and FCC regulations by faxing advertisements without the prior express invitation or permission of Plaintiff or the putative class members or without a valid opt-out notice. Trynex has denied all liability for the claims made by Plaintiff.

2.     Through discovery and expert computer analysis, Plaintiff determined that Trynex successfully sent a facsimile advertisement to 8,199 different fax numbers in December 2006.

3.     Trynex was insured by Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") during December 2006. Hartford initiated coverage litigation that was pending in the Eastern District of Michigan. Trynex and Hartford will enter into an Agreement which will set forth Hartford's and Trynex's respective obligations with regard to Trynex's obligations under this Agreement as well as resolving all insurance coverage issues.

4.     Without admitting or conceding any wrongdoing, Trynex has agreed to settle with Plaintiff and the Settlement Class by making $2,550,000.00 available to fund a settlement of this matter. The Parties reached this agreement after reviewing and analyzing the legal and factual issues presented by this action, the risks and expenses involved in pursuing the lawsuit to conclusion, the likelihood of protracted litigation, and the likelihood, costs, and possible outcomes of one or more procedural and substantive appeals. Based upon their review and analysis, Plaintiff and Trynex agreed to and executed the Agreement.

5.     The Settlement was negotiated among the Parties, through counsel, in

good faith and at arms' length.

6. The key terms of the Agreement are as follows:

(a) <u>Certification of a Settlement Class</u>. The Parties stipulate to certification pursuant to Rule 23 (b) (3) of the following "Settlement Class:" "All persons who were successful sent a facsimile on December 19, 2006 or December 20, 2006, from 'SnowEx … Leaders in Ice Control' promoting the 'best built … best backed' salt spreaders, offering '50%' off on extended warranty for all of our spreaders purchased in December, 2006 and January, 2007,' and instructing interested recipients to 'Call 1-800-Salters for more information.'" Agreement at ¶ 2.

(b) <u>Class Counsel and Representative Plaintiff</u>. The parties have agreed that Plaintiff will be the Class Representative and that Phillip A. Bock of Bock & Hatch, LLC, and Brian J. Wanca of Anderson + Wanca will be Class Counsel. Agreement at ¶ 2.

(c) <u>Monetary Relief to the Members of the Settlement Class</u>. Trynex has agreed to create a settlement fund of $2,550,000.00 (the "Settlement Fund"). Agreement at ¶ 4. Pursuant to the terms of the settlement, each class member who submits a timely and valid claim form will be sent a check for $500.00 for each successful fax transmission identified in the Database referenced in the Agreement. Agreement at ¶ 8. If this would result in total payments exceeding the Settlement Fund, however, the per fax payment shall be calculated on a *pro rata* basis. *Id*. Trynex will place the sum of

3

$1,150,000 into an escrow account (the "Escrow Funds") for the benefit of the Class upon the signing of the Agreement. Agreement at ¶ 4. Upon Final Approval, the Escrow Funds will be used first to pay the sums due under the Agreement. *Id*. Trynex is not required to place the remaining portion of the Settlement Fund into a separate bank account. *Id*. Any portion of the Settlement Fund that is not paid to claiming class members, to the Settlement Class Representative, or to Class Counsel, shall revert to and be kept by Trynex. *Id*.

(d)     <u>Class Notice</u>. The parties have agreed to notify the Settlement Class about the settlement by sending the notice and claim form by facsimile and if facsimile is unsuccessful, then by mail. Agreement at ¶ 6. The notice includes instructions about opting out, objecting, or submitting a claim form by fax or mail to Class Counsel. Agreement at Ex. 2.

(e)     <u>Claims</u>. To reduce administrative costs, Class Counsel have agreed to perform the functions of a typical settlement administrator, issuing the notice, receiving and processing the claim forms, and sending checks to the claimants.  Agreement at ¶ 5.

(f)     <u>Settlement Class Opt-Out Rights</u>. A class member may seek to be excluded from the Agreement by opting out of the Settlement Class within the time period set by the Court. Agreement at Ex. 2. The parties suggest a forty-five (45) day period. Any member who opts out of the Class shall not be bound by any of the Court's orders or the terms of the Agreement and shall

4

not be entitled to any of the benefits set forth in the Agreement.

(g)    Release. In consideration of the relief provided by the Settlement, the Settlement Class will release all claims that were brought or could have been brought, as defined in the Agreement, in this action against Trynex and the other released parties. Agreement at ¶ 12.

(h)    Incentive Award and Attorney's Fees and Costs. At the final approval hearing, after the Class is notified, Class Counsel will ask the Court to approve an award of $15,000.00 from the Settlement Fund to Plaintiff for serving as the class representative. Agreement at ¶ 10. Class Counsel will apply to the Court to approve an award of attorney's fees equal to one third of the Settlement Fund, plus reasonable out-of-pocket expenses not to exceed $80,000.00. Agreement at ¶ 10. Trynex has agreed to pay these amounts and does not object to these requests. Agreement at ¶ 10.

(i)    Right to Rescind. The Parties agree that any Party shall have the right, but not the obligation, to set aside or rescind this Agreement, if any of the following events occur: (a) more than 30% of the Class submits a timely, valid request for exclusion from the settlement; (b) any objection to the settlement is sustained by the Court, regardless of any right to appeal and reverse the trial court's ruling; (c) there are modifications to this Agreement made by the Court, by any other court, or by any tribunal, agency, entity, or person that are not approved or requested by all of the Parties; or (d) for any other reason the exercising Party deems appropriate. Agreement

at ¶ 17.

II.   **The Court should grant preliminary approval to the settlement.**

   A.   **The proposed settlement is within the range of possible approval.**

7.   A district court's review of a proposed Class Action Settlement is typically a two-step process. *Armstrong v. Board of School Directors of City of Milwaukee*, 616 F. 2d 305,314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F. 3d 873 (7th Cir. 1998). The first step is to hold a preliminary fairness hearing prior to notifying the class members about the proposed settlement. *Id.* The purpose of that preliminary hearing is to determine whether the proposed settlement is "within range of possible approval." *In re General Motors Corporation Engine Interchange Litigation*, 594 F. 2d 1006, 1124 (7th Cir. 1979). *See also Carnegie v. Household International, Inc.* 371 F. Supp. 954, 955 (N.D. Ill. 2005) (hearing is to "determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing").

   B.   **Standard for judicial evaluation and approval.**

8.   A court may approve a settlement if the settlement "is fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e) (1) (C). *See Synfuel Technologies, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006); *DHL v. Thoroughbred Technology + Telecom.*, 309 F. 3d 978, 986 (7th Cir. 2002). It is well-established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). If the Court finds that the settlement falls "within the range of possible approval," the

6

Court should grant preliminary approval and authorize the parties to notify the class members about the settlement. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

   **C.  Factors considered in determining whether a settlement is fair, reasonable, and adequate.**

9.     The factors considered are: (1) the strength of the plaintiff's case on the merits compared to the amount of the settlement; (2) the defendant's ability to pay; (3) the likely complexity, length and expense of further litigation; (4) opposition to the settlement from members of the class; (5) evidence of collusion; (6) opinions of counsel; (7) the stage of the proceedings and the amount of discovery completed at the time of settlement; and (8) the public interest. *Isby v. Bayh*, 75 F. 3d 1191, 1198-1199 (7th Cir. 1996).

10.     In this case, these factors show that the proposed settlement is within the range of possible approval. Therefore, the Court should permit the parties to notify the Settlement Class and the Court should schedule a fairness hearing to determine whether to finally approve the settlement.

11.     The Agreement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this case.

12.     Trynex, has agreed to create a settlement fund of $2,550,000.00. Agreement at ¶ 4. Each class member who does not opt-out of the Settlement Class and who submits a timely and valid claim form will be mailed a check for $500 for each of Defendant's faxes successfully sent to them, or their *pro rata* share.

Agreement at ¶ 8.

13.    Class action litigation, especially cases involving numerous or complex issues, is time consuming in terms of both pretrial and trial work. Because of the significant costs that class actions can involve for both parties, courts consider the savings that would result from settlement of the case. *Isby*, 75 F. 3d at 1198-99 (holding that settlement was outcome "comparable if not far superior," to that which the plaintiffs might achieve at trial because continuous litigation would require "resolution of many difficult and complex issues, and would entail considerable additional expense") (quoting *Tafia v. Bayh*, 746 F. Supp. 723, 727 (N.D. Ind. 1994)).

14.    There are risks attendant to further litigation in this matter, and substantial delay and expense. The decision to settle is reasonable in light of the risks of continued litigation. Here, if the parties do not settle now they are scheduled to begin a week-long jury trial in February 2014. After the conclusion of the jury trial, there would undoubtedly be appellate practice. Settlement avoids all of that time, expense and uncertainty.

15.    Trynex has denied liability and has agreed to settle only to avoid the distraction and expense of defending protracted litigation and exposure to higher liability. The TCPA gives private citizens a right to sue to (i) enjoin future transmissions, (ii) recover the greater of actual monetary damages or $500 in damages for each junk fax, or (iii) obtain an injunction plus damages. If a court finds that the sender willfully or knowingly violated the TCPA, it may increase the award up to three times the amount of damages. Here, each class member who does

not opt-out of this proposed settlement and who submits a timely and valid claim form will receive a cash payment of $500 for each fax Trynex successfully sent them. Agreement at ¶ 8.

16.  Plaintiff's attorneys believe this settlement is fair, reasonable, and adequate. Plaintiff's attorneys have litigated TCPA class actions since 2003. They have been appointed class counsel in several such cases pending in this District. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. C 5953, 2009 WL 2581324, *6 (N.D.Ill. Aug. 20, 2009) (Kendall, J.); *Green v. Service Master On Location Services, Corp.*, No. 07 C 4705, 2009 WL 1810769, *4 (N.D. Ill. June 22, 2009) (Hibbler, J.); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) (Bucklo, J.), *appeal denied* (08-8012) (7th Cir. Jun 13, 2008); *CE Design, Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (Kennelly, J.), *app. denied* (September 9, 2009); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909 (N.D. Ill. Oct. 14, 2009) (Gettleman, J.); *Paldo, Inc. v. Group C Communications, Inc.*, No. 08-CV-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (Darrah, J.); *CE Design Ltd. v. Beaty Construction, Inc.*, No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) (Hibbler, J.); *Paldo, Inc. v. Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950 (N.D. Ill. Aug. 20, 2008) (Kocoras, J.). The *Hinman* case was the first contested TCPA class certified within this District.

17.  Additionally, Plaintiff's counsel have successfully negotiated numerous class-wide settlements in TCPA cases.

18.  Based upon the foregoing, and the judgment of experienced class

counsel, Plaintiff requests that the Court preliminarily approve the settlement.

**III.    At final approval, Class Counsel will ask the Court to approve Trynex's agreement to pay Class Counsel's fees and expenses, and an incentive award to Plaintiff.**

19.    At final approval, Class Counsel will request that the Court approve Trynex's payment to Plaintiff in the amount of $15,000.00 from the Settlement Fund for serving as the class representative.

20.    Incentive fees are appropriate to reward class representatives who have pursued claims on behalf of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 571-72 (7th Cir. 1992). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *See Cook v. Niedert, et al.*, 142 F.3d 1004, 1016 (7th Cir. 1998).

21.    Plaintiff was the catalyst of this case. Plaintiff filed and pursued this action. Plaintiff stayed involved and informed. Its efforts greatly benefited the Class. Class Counsel requests that the Court award Plaintiff an incentive payment of $15,000.00 for its efforts on behalf of the class. Other judges within this District have approved similar awards. *See CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, 07 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146); *Targin Sign v. Preferred Chiropractic*, 09 C 1399 (N.D.Ill. May 26, 2011) (Coleman, J.) (Doc. 140).

22.    Additionally, at final approval, Class Counsel will request that the

Court approve Trynex's agreement to pay them attorneys' fees equal to one third of the Settlement Fund. This amount is within the approved range in class actions. *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions).

23.     The Seventh Circuit recognizes that the attorneys' contingent risk is an important factor in determining the fee award. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Morris B. Chapman & Assoc. v. Kitzman*, 193 Ill. 2d 560, 572-73 (2000). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of $20 million), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). *See also Brundidge v. Glendale Federal Bank*, 168 Ill. 2d 235, 238 (1995) ("[O]ne who 'creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees.'").

24.     "In deciding fee levels in common fund cases, we have consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in

the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007), citing *In re Synthroid Mktg. Litig.,* 264 F.3d 712, 718 (7th Cir.2001). The market for legal services paid on a contingency basis shows the proper percentage to apply in a class action that creates a common fund for the benefit of the class. *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992). Where lawyers working on a contingency basis in the relevant community typically charge one-third of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*; *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago,* No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) (39% fee); *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,* 160 F.3d 361 (7th Cir. 1998) (receivership case) (38% fee); *In re Nuveen Fund Lit.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) (33.3% fee); *In re Soybean Futures Lit.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) (Norgle, J.) (33.3% fee); *Liebhard v. Square D Co.,* No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.) (33.3% fee); *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) (Guzman, J.) (33.3% fee); *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.) (33.3% fee); *In re Caremark International Sec. Lit.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) (33% fee).

25.     Here, Class Counsel's request for one third of the settlement fund is within the market rate for TCPA cases. *See G.M. Sign, Inc. v. Finish Thompson,*

*Inc.*, 08 C 5953 (N.D. Ill. Nov. 1, 2010) (Kendall, J.) (Doc. 146) (fees equal to one-third of the settlement fund); *Saf-T-Gard International, Inc. v. Seiko Corp. of America*, No. 09 C 0776 (N.D. Ill. Jan. 14, 2011) (Bucklo, J.) (Doc. 100) (fees and expenses equal to thirty-three percent of the settlement fund); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 09 C 1399 (N.D. Ill. May 26, 2011) (Coleman, J.) (Doc. 140) (fees equal to one-third of settlement fund plus additional $42,640.44 in expenses); *Holtzman v. CCH*, 07 C 7033 (N.D. Ill. Sept. 30, 2009) (Nordberg, J.) (Doc. 33) (fees equal to one-third of the settlement fund); *CE Design, Ltd. v. Exterior Systems, Inc.*, 07 C 66 (N.D. Ill. Dec. 6, 2007) (Darrah, J.) (Doc. 32-2) (fees equal to one-third of the settlement fund); *Eclipse v. U.S. Compliance*, No. 03 CH 922 (Lake County, IL, Dec. 23, 2008) (33.33% plus expenses); *G.M. Signs, Inc. v. BackHauLine*, 07 CH 758 (Lake County, IL, Dec. 10, 2009) (33.33% plus expenses); *DeRose Corp. v. Goyke Health Center*, No. 06 CH 6681 (Cook County, IL, Dec. 11, 2008) (33.33% plus expenses); *Windmill Nursing Pavilion LTD. v. Unitherm, Inc.*, No. 09 CH 16030 (Cook County, IL Dec. 17, 2010) (33.33% plus expenses); *Tabass v. Castle Screen Print Corp.*, No. 04 L 1394 (DuPage County, IL, Dec. 10, 2008) (33.33% plus expenses); *BNS, Limited v. Redondo Family Chiropractic, Inc.*, No. 09-2-19352-5 SEA (King County, WA, Nov. 30, 2010) (33.33%); *All American Painting, LLC v. Dean Weich, Inc.*, No. 09SL-CC05352 (St. Louis County, MO, June 10, 2011) (one-third plus expenses). *See also Accounting Outsourcing, LLC. v Verizon Wireless,* 2007 U.S. Dist. LEXIS 97153 (M.D. La. 2007) (awarding $2,314,328, or more than 35% of the common fund, plus costs);

*Community Vocational Schools v. Turner Educational Products, LLC*, No. 0800853-31-1 (Bucks County, PA, Aug. 4, 2010) (fees of 37.96% of fund); *Locklear Electric, Inc. v. Norma L. Lay*, 09 C 0531 (S.D. Ill. Sept. 8, 2010) (Reagan, J.) (Doc. 67) (approving fees equal to one-third from future recovery from insurer); *CE Design, Ltd. v. Cy's Crabhouse*, 07 C 5456 (N.D. Ill. Sept. 22, 2010) (Kennelly, J.) (Doc. 373) (same); *Hinman v. M&M Rentals, Inc.*, 06 C 1156 (N.D. Ill. Oct. 6, 2009) (Bucklo, J.) (Doc. 225) (same); *Wilder v. Pizza Hut of Southern Wisconsin, Inc.*, 10-cv-229-SLC (W.D.Wis. June 28, 2011) (Doc. 67) (approving fees equal to one-third of Settlement Fund plus $19,156.28 in out-of-pocket expenses).

26.     Trynex has agreed to pay a fair and reasonable amount equal to one third of the Settlement Fund plus reasonable out-of-pocket expenses not to exceed $80,000.00. Class Counsel undertook this case on a contingency basis, and achieved an excellent result in a fair and efficient manner.

27.     Class Counsel resolved this case through unique capabilities from their years of experience in these types of cases. As indicated above, Class Counsel have been litigating TCPA class actions since 2003, and have litigated class actions for many more years.

28.     Obviously, the purpose of a class action lawsuit is to provide a benefit to Class members, not to litigate for the sake of litigating. Class Counsel delivered significant benefits to the Class in the face of numerous potentially fatal obstacles. Tested by the potential infirmities of the case itself, there is little doubt that Class Counsel undertook a significant risk here and the fee award should reflect that risk.

Class Counsel faced a significant risk of nonpayment, not only for their time but also for their out-of-pocket costs.

29.    If the Court finds that the settlement is fair, reasonable, and adequate, then Class Counsel will ask the Court to approve the payment of fees to Class Counsel in an amount equal to one third of the Settlement Fund.

## IV.    The Court should approve notice to the Settlement Class.

30.    The parties propose to issue notice by facsimile, and if the facsimile fails, then by mail to the Settlement Class. A copy of the proposed notice is attached as Exhibit 2 to the Agreement.

31.    Under federal law, notice of the settlement must satisfy due process. *Maher v. Zapata Corp.*, 714 F. 2d 436, 450-453 (5th Cir. 1983); *Walsh v. Great Atlantic & Pacific Tea Co.*, 726 F. 2d 956, 963 (3d Cir. 1983). The Court is vested with wide discretion both as to the manner in which notice is given and the form that notice is to take. 7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2005).

32.    Rule 23 (e) (i) (B) requires that notice of a settlement be provided "in a reasonable manner." Here, the parties have agreed to a reasonable manner of notice by sending it to the fax numbers in question, and then if necessary by mail to the addresses contained in the Database referred to in the Agreement. The simple, one-page claim form will be delivered with the notice, so that members of the Class can complete a claim form and return it immediately by fax or mail if they choose.

33.    The contents of the notice "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the

15

class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c) (3)." Here, the notice satisfies these requirements. Agreement at Ex. 2.

34. The notice meets the legal standards for appropriate notice and satisfies Rule 23 (e). Therefore, the Court should approve the proposed notice and authorize its dissemination to the Class.

## V. The Court should schedule a final fairness hearing.

35. Plaintiff requests that the Court schedule a final fairness hearing to determine whether the settlement should be finally approved. A proposed Final Approval of Agreement and Judgment is attached as Exhibit 3 to the Agreement.

## VI. Conclusion.

WHEREFORE, Plaintiff respectfully requests that the Court enter a Preliminary Approval Order in the form attached as Exhibit 1 to the Agreement, granting preliminary approval of the proposed settlement, directing that the members of the Settlement Class be notified about the proposed settlement in the form and manner agreed by the parties (Exhibit 2 to the Agreement), and setting dates for opt-outs, objections, and a final approval hearing.

Respectfully submitted,


/s__James M. Smith_____
One of Plaintiff's attorneys

Brian J. Wanca
David M. Oppenheim
ANDERSON + WANCA
3701 Algonquin Road, Suite 760
Rolling Meadows, IL 60008
Telephone: 847/368-1500

Phillip A. Bock
Jonathan B. Piper
James M. Smith
BOCK & HATCH, LLC.
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312/658-5500